Galirohs ag                    SENTENCE

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4            v.                          14 Cr. 852 KMK

5  JOHN ROHLMAN,

6             Defendant.

7  ------------------------------x

8                                    October 21, 2016
                                     11:00 a.m.
9                                    White Plains, N.Y.

10 Before:

11              HON. KENNETH M. KARAS,

12                                    District Judge

13                    APPEARANCES

14 PREET BHARARA
        United States Attorney for the
15      Southern District of New York
   SCOTT HARTMAN
16      Assistant United States Attorney

17 JOSEPH VITA
        Attorney for Defendant

18

19

20                    SENTENCE

21

22

23

24

25

Galirohs ag                    SENTENCE

1          THE COURTROOM DEPUTY:  United States v. John Rohlman.

2    14 Cr. 852.  Will counsel please state their appearances.

3          MR. HARTMAN:  Scott Hartman for the government.

4          MR. VITA:  Joseph Vita for Mr. Rohlman.

5          THE COURT:  Good morning.  Please be seated.  I read

6    the transcript of the allocution before Judge~McCarthy.  The

7    one thing I noticed might be missing is the usual *Brady* waiver.

8          I assume you went over the agreement with your client,

9    Mr. Vita?

10          MR. VITA:  Yes, your Honor.

11          THE COURT:  It's in the agreement.  I'll sign the

12   order accepting the recommendation.  In terms of the written

13   commissions, the presentence report that I've read is dated

14   August 9 of this year.  I take it that's the most recent

15   report?

16          MR. HARTMAN:  Yes, your Honor.

17          MR. VITA:  Yes, your Honor.

18          THE COURT:  And then, Mr. Vita, I've read your

19   sentencing memorandum which, of course, included a number of

20   attachments.  Is there anything else I should have read on your

21   client's behalf?

22          MR. VITA:  No, your Honor, that's the complete

23   submission.

24          THE COURT:  I've read the government's letter dated

25   September 30, 2016.  Is there anything else I should have read

Galirohs ag                    SENTENCE

1  from the government's perspective?

2           MR. HARTMAN:  No, Judge.

3           THE COURT:  Have you had an opportunity to go over the

4  presentence report with your client, Mr. Vita?

5           MR. VITA:  Yes.

6           THE COURT:  Are there any objections?

7           MR. VITA:  There are no objections to any of the

8  factual allegations and/or the computations.  The only comment

9  I want to make is that the recommendation that was made by the

10 probation officer which has not been supplemented did not

11 reflect the 5K motion in this case.

12          THE COURT:  I noticed that but I appreciate your

13 noting that for the record.  Mr. Hartman, have you reviewed the

14 report on the government's behalf?

15          MR. HARTMAN:  Yes, your Honor.  We have no objection.

16          THE COURT:  Then I'll adopt the factual findings

17 therein.  I propose to hear from you Mr. Vita, first, and then

18 Mr. Hartman.  You can respond to him if you want to.  And then

19 Mr. Rohlman will have the opportunity at the last word if

20 there's in addition he'd like to say.

21          MR. VITA:  Going forward I just want to acknowledge

22 the presence of a number of people here on my client's behalf.

23 His father, John Rohlman, his mother Elaine, sister Bonnie and

24 also Beth Kagel who worked with the defense team as a sentence

25 mitigation expert.  Very helpful.

1              THE COURT:  Good morning.

2              MR. VITA:  I don't have too much to say in this case

3     other than what's already been submitted.  Mr. Rohlman is very

4     lucky to be alive because what motivated him to do what he did

5     was the very drugs that killed three people.  Unlike Mr. Sica,

6     he was not in this for the money.  He was in this because he

7     was addicted to heroin.  Mr. Sica knew that.  He was my

8     client's source of heroin, including Breaking Bad.  And for the

9     very short time that he was Mr. Sica's lackey, he pretty much

10    was using the same heroin that killed three people.  Lucky he's

11    alive now.

12             He was in drug treatment, was on his way hopefully for

13    recovery when he got charged here.  Once he got charged here he

14    did the right thing, he did the only thing he could do in order

15    to make what he did wrong right.  Unfortunately, the scourge of

16    heroin, the pull of heroin was so strong that even after he had

17    cooperated, even after he was awaiting sentence, he fell back

18    again and he had the matter that was referenced in the

19    government's letter.  Again, he's committed to do good.  He's

20    committed to be a man.  His family is here to help him and

21    hopefully he will be able to have a life, strong life and a

22    good life.  Something that other people who died are not going

23    to have.

24             Thank you, Judge.

25             THE COURT:  All right, thank you very much, Mr. Vita.

1         Mr. Hartman?

2         MR. HARTMAN:  Thank you, Judge.  I'll be similarly

3    brief.  We set forth both the nature of Mr. Rohlman's conduct

4    and the nature of his substantial assistance in the 5K letter.

5    We would move pursuant to 5K1.1 and 3553(e) of Title 18 of

6    United States Code for the Court to sentence the defendant

7    without regard to the mandatory minimum or the Sentencing

8    Guidelines in this case.

9         THE COURT:  That motion is granted.

10         MR. HARTMAN:  Thank you, Judge.  Judge, I think this

11   is a hard sentencing.  I think these cooperator sentencings are

12   always hard.  This one is particularly hard because Mr. Vita is

13   absolutely right that what drove Mr. Rohlman to commit this

14   crime was his addiction to opioids.  And I think Mr. Vita is

15   correct, at least from the government's perspective, that that

16   is something that distinguishes him from Mr. Sica.  Mr. Sica

17   was in it for the money.  And Mr. Rohlman as far as we can tell

18   and as far as we learned during our investigation was not and

19   never really profited at all from this.  It doesn't, however,

20   excuse the conduct and the conduct is incredibly serious.  We

21   see in the news every day the devastating effect that these

22   opioids have on families, on communities.  We saw it firsthand

23   in this case.  The victims of this crime were innocents, they

24   were people who in some cases had longstanding drug addictions,

25   in other cases they did not.  The first victim was someone who

Galirohs ag                    SENTENCE

was a reactional drug user and as far as we can tell was not

someone who had been using heroin for a long time but was just

experimenting with it and he took the drugs that came from

Mr. Sica and he overdosed.  And what makes this case so, what

makes the conduct in this case so galling is that after

Mr. Delello died and that fact was known to Mr. Rohlman and

Mr. Sica and the other people who they worked with in the

Dutchess County community, they continued selling these drugs.

Not only that they sold more than they sold before.  And in

some ways, I think, we heard this from some of the witnesses we

talked to, the fact that Mr. Delello had died was sort of an

advertisement for these drugs because it meant that they were

so powerful that someone could overdose.

        And Mr. Vita is absolutely right that one of the

people who took these drugs was Mr. Rohlman.  And he was

playing not just with other people's lives but also with his

own life.  And I think that is both an aggravator and a

mitigator in this case.

        It's an aggravator because Mr. Rohlman was not only

doing harm to the community, he's also running the risk of

doing harm to his family and people close to him.  But it's

also a mitigator because we do believe that what drove him to

do this was his addiction.  And Mr. Vita used the term lackey

with respect to his relationship to Mr. Sica.  I think that's

right in most respects.  We put those text messages in our

1    sentencing submission because we wanted the Court to understand

2    that this wasn't a partnership of equals.  But again it doesn't

3    excuse the conduct.  And it doesn't excuse Mr. Rohlman's

4    continuing to facilitate Mr. Sica in selling these poison.

5          And Judge Seibel in the sentencing for Mr. Sica

6    compared this to a felony murder case and I think that's an apt

7    comparison.  It's not 100 percent the same as a felony murder

8    case but it's pretty close.  And Mr. Rohlman, if he had helped

9    Mr. Sica to do a robbery and somebody died during that robbery,

10   would be on the hook for murder just like Mr. Sica would be.  I

11   don't think this is much different from that.

12         Mr. Rohlman, it should be said, did cooperate and he

13   cooperated early.  He didn't cooperate as early as he could

14   have.  He was approached before he was arrested.  And it's

15   important to note I think that he was not someone whose

16   cooperation as you sometimes see was necessary to the

17   government's being able to bring these charges.  The charges

18   were brought without Mr. Rohlman's cooperating.  But as we said

19   in our sentencing submission, his testimony at the trial, which

20   came very close to occurring, Mr. Sica pled on the morning of

21   jury selection, would have been, in the government's view,

22   extremely important to the case against Mr. Sica.  I think the

23   reason for that is not so much that the government's

24   independent evidence would not have been sufficient to get the

25   jury past beyond a reasonable doubt on these charges, but as I

1    tried to indicate in our sentencing submission, what

2    Mr. Rohlman offered and what we think he would have delivered

3    in spades is a human perspective on this, an inside look at the

4    way this worked, and confirmation, direct evidence of what the

5    government argued in the complaint by circumstantial evidence,

6    which was the fact that Mr. Sica and these other folks knew

7    about these deaths and continued to sell these drugs.

8         I think that would have been very important testimony.

9    And Mr. Rohlman was prepared to give that testimony.  And as I

10   indicated in the sentencing submission was in every respect an

11   exemplary cooperator in terms of trial preparation and his

12   focus and his willingness to think hard about the questions

13   that he was being asked and answer them candidly and truthfully

14   and not get distracted or be dismissive.

15        There is a significant black mark on his cooperation.

16   And I would be lying, Judge, if I told you we didn't seriously

17   consider withdrawing from the cooperation agreement and not

18   filing a 5K because of the fact that Mr. Rohlman, despite his

19   obligations of the cooperation agreement to not commit further

20   crimes, was committing further crimes.  He was facilitating the

21   distribution of drugs in the Putnam County Jail.  That's a very

22   serious crime.  It's a crime that by the statute 791 requires

23   the Court, if someone is charged with that crime, to impose a

24   consecutive sentence.  I think that's a reflection of the fact

25   that however dangerous selling drugs on the street is, and it's

1   very dangerous as we see from this case, it's even more

2   dangerous in a setting like a prison where you have other

3   considerations having to do with the close nature and the folks

4   that you have there.  So it's a very serious crime.  But I

5   think Mr. Vita is absolutely right that when you're thinking

6   about that that one of the mitigators is the fact that

7   Mr. Rohlman is an addict and has been an addict for most of his

8   adult life.

9            And I will say, Judge, I'm happy not to be sitting in

10  your chair because I think this is hard.  I think that that

11  matters in terms of thinking about his criminal conduct here.

12  And the fact that he wasn't profiting in these matters.  I

13  don't think it excuses it in any way but I think it does

14  matter.

15           So we ask you to do what you think is right and

16  sentence him based on all these facts.

17           THE COURT:  Okay.  Thank you, Mr. Hartman.

18           Mr. Vita, anything else?

19           MR. VITA:  Judge, I just want, one thing I want to

20  focus on in terms of his relapse when he was in Putnam County

21  Jail which I think is important.  He wasn't in a drug rehab

22  program, he was in Diversion.  He had pled guilty to felonies

23  and misdemeanors in state court.  He had done well for two

24  months.  We have a letter from Mr. Carpenter --

25           THE COURT:  I read all of that.

1          MR. VITA:  He was taken out of that, Judge, remanded

2     to federal custody for a period of over two years, Putnam

3     County Jail, very little in terms of drug treatment.  He was

4     involved as a cooperator.  Also involved in awaiting sentencing

5     without any idea what's going to happen to him.  And that's the

6     context in which he had this failing, Judge.  So again I can't

7     say what would have happened, could have happened.  But I think

8     that circumstance of somebody being in drug rehab, being taken

9     out of it and not having those resources that maybe he needs in

10    order to maintain sobriety, and again I realize this is going

11    to be a lifetime struggle.  His family is here for him.  Is

12    certainly I think a mitigating factor in what happened in that

13    regard.  And he did own up to what he did do, Judge.  I wanted

14    to make sure your Honor is fully aware of that.

15          THE COURT:  Thank you.  As I said, I've read your

16    explanation in your letter which really echoes what you said

17    today and I did read all the exhibits including the letter from

18    Mr. Rohlman's state attorney.

19          Mr. Rohlman, anything you would like to say?

20          THE DEFENDANT:  Yes, I would like to say something.  I

21    just want to say, you know, I understand how serious my

22    involvement is in this whole situation.  I know the decisions

23    that I made back then when I was using and getting high, they

24    were stupid and they ultimately caused the death of three

25    people.  Not a day has went by that I haven't thought about

1    that.  One of them people being, he was one of my good friends.

2    And I got to live with that, that fact for the rest of my life.

3          And Joe is right, the decisions that I made were based

4    off of the fact of whether or not, like, when is the next time

5    I'm going to get high, how am I going to get high, how am I

6    going to not be sick.  When I'm using, I'm not me.  I'm

7    selfish.  All I care about is myself.  And that drug.  I don't

8    think about anybody else except for myself.  And I've had a

9    chance to do rehab for a little while and get myself clean and

10   I liked it, I was happy.  That's what I wanted to do.

11         As far as what happened in Putnam, again I've been to

12   rehab, I'm in Putnam, I'm surrounded by drugs.  There are

13   people there coming off of drug court violations, coming in

14   from the street, bringing stuff in.  Most of the things that I

15   learned while in rehab I can't put to use while I'm in Putnam

16   County.  I'm not surrounded by sober peers.  I can't call a

17   sponsor.  The meetings are nonexistent most of the time there.

18   And it's like, I'm put in the middle of that situation.  And

19   I'm about to get sentenced.  I'm nervous, peer-pressured,

20   whatever.  I'm a drug addict.  I'm not a drug dealer, I'm a

21   drug addict.

22         I know what I did with Dennis, it wasn't the right

23   thing to do.  I used him, he used me.  But I just want a

24   chance, another chance to live my life, to be able to be a

25   successful, functioning member of society.  I want to get

Galirohs ag                    SENTENCE

1    married, I want a family.  I want to work.  I want a house.

2    This is not what I want to be doing for the rest of my life.

3    And this is not why I'm, it's not who I am, it's not.  That's

4    it.

5              THE COURT:  Thank you, Mr. Rohlman.

6              The Court's task is to determine what sentence is

7    sufficient but no more than necessary to achieve the goals of

8    the sentencing laws as they apply to Mr. Rohlman and to his

9    case.  To do that I have considered, as required to, all the

10   factors set forth in 18 U.S.C. 3553(a).  In doing that I have

11   carefully considered the written submissions of Mr. Vita and

12   Mr. Hartman and as I said Mr. Vita's written submission not

13   only includes his arguments but a number of letters from family

14   and friends of Mr. Rohlman.  There is a very helpful submission

15   by the professional sentencing assister, which is not a

16   technical term, but there it is, as well as Mr. Rohlman's state

17   counsel.

18             The one thing that stood out, by the way, that I think

19   is really important, Mr. Rohlman, for you to focus on is you

20   have not only the unconditional support of your family, which

21   by the way, there are people who sit in that seat who have lost

22   that and those are the people I most fear for.  But you also

23   have offers of employment.  And that's important for obvious

24   reasons.  It gives you something to step into when you step out

25   of jail as opposed to just stepping out of jail.  And I think

1    that's important too and I'll talk about that in a minute.

2              I've also considered of course what everybody has said

3    here today.  In terms of the 3553(a) factors we're told by

4    higher courts that the starting point is the sentencing

5    guideline calculations.  That is set forth without objection at

6    paragraphs 28-42 of the presentence report.  In terms of the

7    base offense level it's quite high, it's 38.  That's because

8    the distribution of heroin scheme in this case caused the death

9    of three individuals.  So this is not one of the many

10   run-of-the-mill drug cases where there are unanimous victims.

11   There are identifiable victims whose death can be attributed to

12   the conduct of Mr. Rohlman and Mr. Sica who is quite an

13   individual.

14             So pursuant to 2D1.1(a)(2) that's how we get to the

15   base offense level of 38, which provides that a person being

16   sentenced convicted under Title 21 United States Code Sections,

17   among others, (b)(1)(B) which is applicable here, and the

18   offense of conviction establishes that the death, that death

19   resulted from the use of a substance, that's how you get to

20   level 38.  Three levels come off because of Mr. Rohlman's

21   acceptance of responsibility.  That's reflected in his timely

22   guilty plea.  That's pursuant to 3E1.1(a) and (b).  This yields

23   a total offense level of 35.  The criminal history here is II

24   because there are two criminal history points, one each from

25   separate judgments in March of 2014 because they relate to

Galirohs ag                    SENTENCE

1    separate offenses and they're discussed at paragraphs 39 and 40

2    of the presentence report.  That goes back to some sentences in

3    2013, one burglary in the third degree, illegal reentry with

4    intent to commit a crime.  And the other is criminal possession

5    of stolen property in the fourth degree.  So at a total offense

6    level of 35 and a Criminal History Category of II really the

7    operable guideline range is governed by the mandatory minimum

8    which is 20 years.  If it were not for the mandatory minimum,

9    then the guideline range would be 188 to 235 months which is

10   below the mandatory minimum.  20 years is the mandatory

11   minimum.

12           That's the math.

13           In terms of the other factors under 3553(a),

14   Mr. Rohlman's personal history and his characteristics, the

15   hardest part of these cases, and when I say these cases, the

16   cases that happen all too often of individuals who are, to

17   phrase it the way Mr. Rohlman phrases it, he's not a drug

18   dealer, he's a drug user but what happens is the addiction

19   drives the person's involvement in distribution.  So they're

20   not at the top of the food chain in the distribution network,

21   they're sort of at the bottom because their addiction makes

22   their labor cheaper and also their willingness to undertake

23   risks is greater.  And Mr. Rohlman says he used Sica, Sica used

24   him, and to quote the Eagles, neither one cares.  But it still

25   begs the question of free will.  Addiction doesn't go away

1    easily, especially heroin addiction.  It's why we're seeing

2    overdoses and deaths.  Because people can't shake a drug that

3    they know on some rational level is bad for them.  And people

4    around them tell them this all the time.  So at one point do we

5    say well, it's a mitigating factor.  And then how much of a

6    mitigating factor.  Because if we say basically it's a complete

7    mitigating factor we're almost absolving the person of

8    responsibility; he's a an addict and therefore could not

9    control his or her actions.  Do we excuse the person who gets

10   behind the wheel after having seven bottles of gin and they

11   kill somebody, some dramatic front page story we see

12   occasionally, and we say he's an alcoholic, and it's a serious

13   disease and needs to be treated, of course.  But what do we say

14   to the victims.  Do we say to the victims, the person who sold

15   this product to your son or daughter, they didn't mean to, they

16   can't control themselves, they're not responsible.  That's a

17   tough sell.  And certainly as a matter of law it's not an

18   excuse, it's not a defense.  So it's not a complete mitigator

19   in that sense.  But it certainly is relevant and it is a

20   mitigating factor.

21        I think Judge Seibel's analogy is right in sort of

22   saying that what Sica did is a lot like felony murder and

23   implicit in that obviously is her view that he was in total

24   control of what he was doing and should be fully responsible

25   for the consequences of his actions.

1              Now in terms of looking at it from the glass half

2      full, as I said, Mr. Rohlman has the very real benefit of

3      having family that has been supportive and continues to be

4      supportive.  You know, needless to say, Mr. Rohlman, among the

5      pain you've distributed here includes your family.  Imagine the

6      sleepless nights that they've had including last night awaiting

7      your sentence.  Imagine their fear of getting a phone call that

8      says either your son or your brother is dead from using heroin

9      or he's been arrested.  You know, you talk about wanting to

10     have a family some day and I hope you do and some day when you

11     have kids you will have a little bit of an appreciation, more

12     than an appreciation than you do now, on some level you

13     appreciate it but until you get to where mom and dad are, you

14     can't appreciate just what pain you have caused them and others

15     in your family.  But there are other parents out there who got

16     that phone call and that can't be forgotten here.

17             Which is a way to pivot to the other factors under

18     3553(a) that matter here.  The need to impose a sentence that

19     promotes respect for the law and provides for just punishment

20     and takes into account the seriousness of the criminal conduct.

21     We're dealing with a major epidemic.  You are a small part of

22     that, both from the victim standpoint and the perpetrator

23     standpoint.  Your role in the offense was nowhere near what

24     Sica's was.  Your motive for it was different.  Again, as a

25     matter of law, it doesn't excuse it but it certainly puts a

Galirohs ag                    SENTENCE

1   different light on it.  Sica is just making money off of

2   addiction knowing he's going to kill people.  So bravo, Judge

3   Seibel.

4           Now, in terms of deterrence, you don't have a huge

5   criminal history.  The Putnam County incident is not a good

6   fact for you.  It does raise sort of an interesting point and I

7   don't pretend to know the answer to this but in a situation

8   like this one wonders if it would have been feasible to have

9   Mr. Rohlman housed at a facility that offered him some kind of

10  program.  This wasn't a case where there were 50 defendants and

11  because of separation orders and whatnot there were limited

12  options of where he could go.  And I don't mean this to be

13  critical of anybody.  But to Mr. Vita's point that the

14  Diversion program was in its infancy but it seemed to be taking

15  hold, but then that can't go forward for perfectly

16  understandable reasons, Mr. Rohlman got arrested.  But to the

17  extent that everybody seems to agree that the starting point

18  here is Mr. Rohlman has to confront and deal with his

19  addiction, then it seems to me there's got to be at least some

20  way or at least try to find some way to let him have the tools

21  to do that.  It doesn't -- again, Mr. Rohlman is responsible

22  for what he did and he has explanations and that's fine.  But

23  one just wonders if there's a way to be proactive in helping

24  the Mr. Rohlmans of the word deal with the addiction issues

25  while they're awaiting sentence or awaiting the next step in

1   their case.

2          And as Mr. Vita says in the letter, he knows the

3   government could have ripped up that agreement.  Plain and

4   simple.  If that case had gone to trial and you had testified,

5   they didn't rip up the agreement, you would have spent an

6   uncomfortable hour or so beings grilled about that by no doubt

7   a very good attorney, which makes them uncomfortable, the

8   United States Attorney office people, because then their

9   decisions are put on trial.  I think what's important about

10  that, the reason I bring it up, you caught a couple of breaks,

11  you got this cooperation agreement -- let's start from the

12  first break you caught.  You didn't die when you took that

13  stuff.  Let's not glide past that.  The second break you get is

14  you get this cooperation agreement which gives you the

15  opportunity to get out from underneath.  It doesn't guarantee

16  it but it gives you the opportunity.

17         Now, you say, Mr. Vita would say but you earned it,

18  you did the right thing, you cooperated, you told the truth,

19  you gave the government, answered all their questions, you were

20  in the bullpen ready to go to testify.  Okay, fair enough.

21  Then you pulled this stunt in Putnam and then you caught a

22  break that the government didn't exercise its discretion to say

23  see you later.  And at some point and I think you really can be

24  the poster child for this, at some point you need to stop

25  relying on other people cutting you a break.  You need to make

1    your breaks by not doing certain things and by doing certain

2    things you didn't do before.  So because here's the thing.  If

3    you do anything like this again, (a) you could die; (b) just

4    from a legal standpoint, even Mr. Vita is going to have a hard

5    time, or somebody as good as Mr. Vita, saying to the government

6    let him cooperate again.  The government is just going to say

7    come on.  He got his break.  He didn't learn his lesson.

8         So no.  You don't even want to think what the

9    mandatory minimum is at that point.  20 would be if you're

10   lucky.  And there goes the dream of the family, the house, the

11   whole thing, gone.  So it's real.  You really need to

12   understand that.  It's not that people are going to be

13   constantly there to catch you.  They're there to help you.  But

14   they're not there to catch you.

15         In terms of other deterrence issues, general

16   deterrence I think is very poignant in these cases because as a

17   society people are trying to figure out how to deal with this

18   heroin addiction.  And there are all kinds of ideas and they're

19   not necessarily mutually exclusive of one another.  One idea is

20   people should understand that there is pain in the form of long

21   jail sentences for those who help distribute this poisonous

22   drug.  And the guidelines here are so high, the mandatory

23   minimums so high because there are identifiable victims.  Now

24   the flip side of deterrence is you, as Mr. Vita said, tried to

25   take a wrong and make it right by cooperating.  And you are in

1    a position to, and it may be exactly why Sica agreed to that

2    plea that led to that sentence, you were in a position to help.

3    So the idea is that to give an incentive to people like you to

4    do that you have the possibility of a lower sentence.  The flip

5    side of deterrence.  And the greater the significance of the

6    crime being solved, if you will, by the cooperation, maybe the

7    greater the break.  And that's sort of, some people would argue

8    that's the idea.  And then the need to avoid unwarranted

9    disparity.

10         Mr. Vita has been around the block.  He makes the

11   request not lightly that you've done enough time.  And he does

12   point out, and of course this is true, the Probation

13   Department's recommendation was written before the government's

14   letter so unfortunately we don't have the Probation

15   Department's input.  I think that takes too lightly some of the

16   aggravating factors here.  The severity of the conduct

17   motivated as it was by reasons other than what motivated Sica

18   but nonetheless people died.  This isn't a hypothetical.  They

19   died.  And the reaction was not okay, we better turn to a

20   different life here.  It was not that at all.

21         And the Putnam thing is not the crime of the century

22   but it's out there.  On the other hand, I think the addiction

23   issues are very real, I think the cooperation here was

24   substantial and it helped take a really bad person off the

25   streets and that's important.  The other thing I think really

Galirohs ag                    SENTENCE

1    cuts in your favor is what the good people in the back have

2    offered you and will continue to offer you and the people who

3    can't be here who wrote those letters.  You're not going to be

4    able to beat this addiction alone and you will never be able to

5    declare victory.  Right, you know that?

6                THE DEFENDANT:  Yes.

7                THE COURT:  Every day is a new struggle.  What you did

8    yesterday matters not a whit if you go back to doing those

9    things.

10               THE DEFENDANT:  Yes.

11               THE COURT:  So to meet that struggle, you're going to

12   have to rely on people to help you, not catch you, starting

13   with the people in the back.  But all with the starting point

14   of realizing that every day is a new battle.  But that people

15   do wage the battle and they achieve years of sobriety, even

16   with heroin.  But it's got to be 100 percent.  99 percent ain't

17   good enough.  You get 99 in biology that's pretty darn good.

18   You get 99 in heroin addiction, that's not good.

19               THE DEFENDANT:  No.

20               THE COURT:  100.  And getting a job, that would be a

21   huge plus.  Get some stability in your life, get some income,

22   get a family.  More things to live for, more things to say I

23   own, I have a responsibility here, and more fortification

24   against going back to where you were.

25               So I think there's cause for optimism here, maybe more

1   than some of these other cases starting with your cooperation.

2   Starting with the offers you have.  Putnam was a trip but it

3   certainly wasn't fatal.  It does remind you how fragile it all

4   is, right?

5          THE DEFENDANT:  Yes.

6          THE COURT:  What I'm going to do is I'm going to

7   impose a sentence and sentence you to the custody of the

8   Attorney General for a period of 40 months to be followed by

9   four years of supervised release.  I'm not going to impose a

10  fine, you can't afford one.  There's no restitution.

11         Forfeiture, Mr. Hartman?

12         MR. HARTMAN:  No, your Honor.

13         THE COURT:  Special assessment is a hundred dollars.

14  The conditions of supervised release are as follows.  Please

15  listen carefully Mr. Rohlman.  You're not to commit another

16  federal, state or local crime.  Don't go 56 if the speed limit

17  says 55.  That's what I mean by 100.  You're not to possess a

18  controlled substance, a firearm or destructive device.  It is

19  not a defense you don't own any of that stuff.  You can't

20  possess it.  And possession under the law is very broad.  You

21  can jointly possess something with someone.  You can possess

22  something you don't even touch.  I've had people sit there and

23  say yeah, he gave me the gun because his girlfriend was on his

24  case, so he put it in my closet -- which by the way I'm not

25  going to believe -- but even if that's true it's still

1    possession.

2              Of course, what's the key there?  Hanging out with the

3    wrong people.  Right?  The folks in the back aren't going to

4    ask you to keep a gun or they're not going to show you any

5    Breaking Bad or anything like that.  Okay.  I'm going to

6    suspend the mandatory drug-testing condition.  I'll impose a

7    special one momentarily.  You're to cooperate in the collection

8    of DNA as directed by the probation officer.

9              The standard conditions of supervision 1-13 are

10   imposed.  There are some added conditions.  You're going to

11   participate in an outpatient treatment program approved by the

12   Probation Office which program may include testing to determine

13   whether you have reverted to using drugs or alcohol.  The Court

14   authorizes the release of available drug treatment evaluations

15   and reports to the substance abuse treatment provider as

16   approved by the probation officer.  You're going to be required

17   to contribute to the cost of services rendered in an amount

18   determined by the probation officer based on your ability to

19   pay or the availability of third-party payment.  Also, you're

20   to submit your person, residence, place of business, vehicle or

21   any other premises under your control to a search on the basis

22   that the probation officer has reason to believe that

23   contraband or evidence of a violation of the conditions of

24   release may be found.  The search does have to be conducted at

25   a reasonable time and in a reasonable manner.  But failure to

Galirohs ag                     SENTENCE

1   submit to such a search may be grounds for revocation.  You

2   have to inform any others that the premises may be subject to

3   search pursuant to this condition.  You that to report to the

4   nearest Probation Office within 72 hours of release from

5   custody and you may be supervised by the district of residence.

6           Any open counts?

7           MR. HARTMAN:  No, your Honor.

8           THE COURT:  All right.  Things you want in the

9   judgment, Mr. Vita?

10          MR. VITA:  Just a recommendation that he be, I guess,

11  designated to a place close to his residence.

12          THE COURT:  Nearest to the New York Metropolitan area?

13          MR. VITA:  That's correct, Judge.

14          THE COURT:  I will make that recommendation.

15          You do have a right, Mr. Rohlman, to appeal this

16  sentence.  You have to file a notice of appeal within 14 days

17  of when the judgment is entered.  You can talk to Mr. Vita

18  about this.

19          This is a very high sentence.  It's certainly a

20  sentence higher than your fine attorney asked for and I

21  understand why he made the request.  I've explained some of the

22  factors that may be were aggravating above the request for time

23  served.  But this is obviously far less than the death sentence

24  you could have received by virtue of using the stuff you were

25  using, which had nothing to do with the courts.  It's more than

Galirohs ag                    SENTENCE

1   90 percent below what Sica got which accounts for the

2   combination of his role, his motives, your personal issues

3   including addiction issues and your efforts to make it right.

4   The reason I did not impose a longer sentence is because I want

5   you to feel that there's some momentum on your side and that

6   you can act on that momentum.  If you appreciate that then when

7   you get out take advantage of these offers that you have for

8   jobs, take advantage of the offers you have from your family to

9   get you to the point where you're grounded.  And I felt that if

10  I gave you a longer sentence you would lose the momentum and be

11  more likely to give into the triggers.  So you understand the

12  task ahead of you.  It is monumental but you can do it.  You're

13  a young person.  And if you put your mind to it why not realize

14  your dreams.  Because the consequences to you, you don't need a

15  lecture from me about that if you don't.  Okay?

16            THE DEFENDANT:  Mm-hmm.

17            THE COURT:  Anything else?

18            MR. VITA:  No, your Honor, thank you.

19            THE COURT:  Mr. Hartman?

20            MR. HARTMAN:  Thank you, Judge.

21            THE COURT:  Good luck Mr. Rohlman.  Thank you

22  marshals.

23            (Record closed; 11:40 a.m.)

24

25